IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JOSIE CRUZ, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 03 C 9298 |
|  | ) |  |
| GLOBE REALTY MANAGEMENT CO., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On December 23, 2003, plaintiff Josie Cruz ("Cruz"), filed a two count complaint against defendant Globe Realty Management Co. ("Globe"), pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. (Dkt. No. 1). Globe answered the complaint and discovery proceeded in the case. (Dkt. No. 7). After a period of discovery, and with the assistance of Magistrate Judge Ashman, the parties in early March 2005 settled the case. Included in the settlement agreement was Globe's agreement to install, among other things, an outdoor ramp and an indoor wheelchair lift to accommodate the residents, including Cruz, at 6920 South Crandon Avenue. The agreed upon items were not installed in the building in the time frame by the parties. Plaintiff Cruz, in turn, sought an order to show cause which has now been resolved. (Dkt. Nos. 31, 34). On November 4, 2005, Cruz filed the pending motion seeking compensation, attorneys fees' and costs resulting from Globe's alleged breach of the parties' settlement agreement. (Dkt. No. 35). For the reasons set forth below, Cruz's motion for compensation, attorneys' fees and costs is granted.

BACKGROUND

Cruz lives at 6920 South Crandon Avenue in Chicago, Illinois. (Dkt. No. 36-2, at pg. 1). She has a physical disability and relies on a motorized scooter for mobility. (*Id.*) 6920 South Crandon is a multifamily apartment building owned by Globe that receives a federal housing subsidy. (*Id.*) As alleged in Cruz's initial complaint, 6920 South Crandon "was not accessible to people with disabilities in that the front door could be entered only by stairs. This in turn required Cruz to use an inconvenient and, for her, dangerous delivery ramp leading to the basement." (Dkt. No. 36-1 at pg. 1).

As mentioned above, after several months of discovery, the parties entered into a settlement agreement dated March 3, 2005 and this court entered an agreed order of dismissal on March 15, 2005. (Dkt. Nos. 22, 23). This court's March 15, 2005 order: (1) instructed the parties to comply with the terms of the March 3, 2005 settlement agreement, (2) explicitly stated that this court retained jurisdiction for the purpose of enforcing the terms of the settlement agreement through March 30, 2006, and (3) otherwise dismissed the case with prejudice with each party to bear its own attorneys' fees and costs. (Dkt. No. 23).

The settlement agreement required Globe to build an outdoor concrete ramp and indoor wheelchair lift at the main, front entrance of 6920 South Crandon Street by May 30, 2005. (Dkt. No. 36-2 at pg. 2). If Globe was unable to meet the May 30, 2005 deadline, Globe was required to inform Cruz's counsel in writing of: (1) the efforts made to comply with the deadline, (2) the reasons for the delay, (3) the date that Globe reasonably expected to complete the work, and (4) the reasons why Globe believed the work would be completed by that future time. (*Id.* at pg. 2-3).

The settlement agreement required the parties to endeavor in good faith to informally resolve any differences over the implementation of the settlement agreement. (*Id.* at pg. 3). However, Cruz had a right to seek from this court any appropriate remedies for any breaches of the settlement agreement by Globe if the parties could not resolve their differences. (*Id.* at pg. 4). She was also authorized to seek attorneys' fees incurred for any litigation that she had to undertake in response to a breach by Globe. (*Id.*)

Although Globe promised in the settlement agreement to completed the project by May 30, 2005, the project was not completed until October 27, 2005. Cruz could not access her home via the front entrance of 6920 South Crandon until the entire project was completed because she needed both the wheelchair ramp and lift for access. Cruz did not benefit from any partial performance by Globe that occurred before October 27, 2005. Cruz argues that Globe breached the settlement agreement through its continued delays and the need for her to return to this court and seek judicial assistance in enforcing the settlement agreement.

This court participated through the holding of status hearings on August 2, 2005 and August 23, 2005, (Dkt. Nos. 27, 28), granting Globe's motion for modification of the agreed order to extend time for the completion of the project on October 6, 2005, (Dkt. No. 33), and providing a forum for Cruz to file her October 4, 2005 motion for a rule to show cause why Globe should not be held in contempt for violation of the settlement agreement. (Dkt. No. 31).

On October 27, 2005, this court mooted Cruz's October 4, 2005 rule to show cause motion when Globe represented during the status hearing that the wheelchair ramp and lift were both in place and operational. (Dkt. No. 34). Despite mooting Cruz's motion, this court did, however, allow Cruz leave to file the present motion for compensation, attorneys' fees and costs

at the October 27, 2005 status hearing. (*Id.*)

## ANALYSIS

Cruz argues in her present motion that "[i]n resolving [her initial lawsuit], and in exchange for immediate safe access to her building, [she] gave up remedies she could have otherwise sought at trial, including compensatory damages. ... Despite this agreement, however, [Cruz] did not realize the benefits of this exchange for over six months and only after [this court's] intervention." (Dkt. No. 36-1 at pg. 2). Cruz seeks $14,139.54 in attorneys' fees and costs and $8,000.00 in compensatory damages for Globe's alleged violation of the March 3, 2005 settlement agreement. (Dkt. No. 36-1 at pg. 1). Globe counters that Cruz's motion should be denied because Cruz is not a "prevailing party," most of Cruz's requested fees and costs are not reasonable, and Cruz is not entitled to compensatory damages because the agreement was never breached.

### A. The Court's Subject Matter Jurisdiction

"Settlement agreements are contracts," *Seymour v. Hug*, No. 04 C 2041, 2005 WL 3019418, at *13 (N.D. Ill. Nov. 8, 2005) (citing *Laserage Tech. Corp. v. Laserage Lab. Inc.*, 972 F.2d 799, 802 (7th Cir. 1992); *McCall-Bey v. Franzen*, 777 F.2d 1178, 1186 (7th Cir. 1985)), and "[d]isputes about settlement contracts must be resolved in state court, unless they independently satisfy the requirements of federal jurisdiction." *Goulding v. Global Med. Prod. Holdings, Inc.*, 394 F.3d 466, 467-68 (7th Cir. 2005) (citing *Peacock v. Thomas*, 516 U.S. 349 (1996); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994)). "A settlement agreement, unless it is embodied in a consent decree or some other judicial order or unless jurisdiction to enforce the agreement is retained (meaning that the suit has *not* been dismissed with prejudice), is enforced

just like any other contract." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002) (emphasis in original) (citing *Kokkonen*, 511 U.S. at 380-81; *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002)).

The parties' March 3, 2005 settlement agreement required that the order dismissing the action shall state that this court retains jurisdiction. (Dkt. No. 36-2 at pg. 10). This court's March 15, 2005 agreed order explicitly noted that the court was retaining jurisdiction for the purposes of enforcing the terms of the settlement agreement through March 30, 2006. (Dkt. No. 23 at ¶ 2). This court has subject matter jurisdiction to consider Cruz's pending motion alleging that Globe breached the settlement agreement.[1]

B. Globe's Breach of the Settlement Agreement

Although Globe failed to complete the project until October 27, 2005, Globe argues that it did not breach the settlement agreement. Globe argues that the original May 30th deadline was extended to June 30th by consent of the parties and again extended to October 4th and October 27th by court order.

As contracts, "[i]ssues regarding the formation, construction, and enforcement of

---

[1] This court also entered an accompanying minute order with the agreed order on March 15, 2005. The minute order stated, "Enter agreed order of dismissal with prejudice, and each party shall bear its own attorney's fees and costs. Civil case dismissed." (Dkt. No. 22). Despite the minute order's characterization of the agreed order as being a dismissal with prejudice resulting in the dismissal of the case, the language of the March 15, 2005 agreed order explicitly stated that the court was retaining jurisdiction through March 30, 2006 for the purpose of enforcing the terms of settlement agreement. (Dkt. No. 23). *See Ford v. Neese*, 119 F.3d 560, 562 (7th Cir. 1997) (a district court's intention to retain jurisdiction was sufficient to retain jurisdiction despite any issues raised by the specific terminology used by the court); *compare Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 576 (7th Cir. 2005) (a court fails to retain jurisdiction to enforce a settlement agreement when the judgment does not explicitly incorporate the terms of the settlement into the judgment or the court fails to reserve authority to enforce the settlement).

5

settlement agreements are governed by state contract law." *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004) (citing *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000)). The settlement agreement states that it shall be "interpreted, enforced and governed under Illinois law." (Dkt. No. 36-2 at ¶ 14).

The settlement agreement required Globe to construct the ramp and lift by May 30, 2005. (*Id.* at ¶ 1). Globe was required to notify Cruz's attorneys in writing "if Globe is unable to meet the [May 30, 2005] deadline due to issues beyond its control such as weather, the unavailability of a contractor, city permitting, or the unavailability of necessary parts or supplies." (*Id.* at ¶ 4). Globe's notification did not automatically extend the deadline, but instead the parties were to attempt to agree on an extension and the parties were allowed to seek this court's assistance in resolving any issues related to any needed extensions. The settlement agreement is open ended in its discussion of extensions and does not contain a final date from which no additional extension would be allowed.

"In Illinois, where a contract does not specify a time for performance of a particular obligation, a 'reasonable time' is implied." *Nelson v. Sotheby's Inc.*, 128 F. Supp. 2d 1172, 1176 (N.D. Ill. 2001) (citing *Clay v. Harris*, 592 N.E.2d 1154, 1158 (Ill. App. Ct. 1992)). "A reasonable time [is] such time as is necessary to do conveniently what the contract requires." *Wilmette Parterns v. Hamel*, 594 N.E.2d 1177, 1184 (Ill. App. Ct. 1992) (citing *Yale Dev. Co. v. Aurora Pizza Hut, Inc.*, 420 N.E.2d 823 (Ill. App. Ct. 1981)). "What constitutes a reasonable time is determined by all of the conditions and circumstances surrounding the contract and the performance thereof." *Grand Nat'l Bank v. Vill. of Round Lake Beach*, No. 96 C 2790, 1997 WL 12796, at *7 (N.D. Ill. Jan. 10, 1997) (citing *U.A.W. v. Randall Div. of Textron, Inc.*, 5 F.3d 224

(7th Cir. 1993); *Wilmette Parterns*, 594 N.E.2d at 1184).

The agreement set an initial deadline of May 30, 2005, one and one-half months after the court's dismissal order, for the completion of the project. Although the parties agreed to an initial extension, it is unreasonable to conclude that Cruz willingly consented to an extension of almost five more months through October 27, 2005. Cruz wanted the ramp and lift completed as soon as possible because her alternative route through the basement was both dangerous and inconvenient. Cruz had hoped that the project would take the agreed upon one and one-half months to complete but it ultimately took seven months. Globe's failure to complete the project was partially due to Globe's negligence in planning for the project and following through with its contractors. Globe delay is unreasonable, it has breached the agreement and therefore this court turns to a consideration of what is the appropriate compensation for Cruz.

C. Appropriate Compensation for Globe's Breach

1. Compensatory Damages for Cruz

Cruz seeks $8,000.00 in compensatory damages to compensate her for the alleged pain, suffering and inconvenience she experienced through Globe's breach of the settlement agreement. Globe argues that Cruz should receive nothing because her injuries are only emotional distress and Illinois law does not ordinarily allow emotional distress damages for breach of contract injuries.

"The purpose of compensatory tort damages is to compensate; it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs." *Arthur v. Catour*, 833 N.E.2d 847, 856 (Ill. 2005). "When seeking damages, the plaintiff must establish damages were sustained *and* there was a reasonable basis for calculation of the damages. Damages cannot be

based on conjecture or speculation." *Decatur Imaging Center v. Ames*, 608 N.E.2d 1198, 1202 (Ill. App. Ct. 1992) (emphasis in original) (citing *Keno & Sons Construction Co. v. La Salle Nat'l Bank*, 574 N.E.2d 151, 153 (Ill. App. Ct. 1991); *Wehmeier v. UNR Indus., Inc.*, 572 N.E.2d 320, 339 (Ill. App. Ct. 1991)).

Globe's breach resulted in Cruz taking a more dangerous route into her building through the basement. This alternative route was not always available when the basement entrance was locked or the basement elevator was out of order and when this occurred Cruz was forced to call the Chicago Fire Department or seek other residents to assist her up the main steps. (Dkt. No. 36 at pg. 10). Cruz's counsels have asserted in the memorandum filed in support of Cruz's recovery of compensatory damages that "these circumstances are not minor, infrequent inconveniences; they caused Cruz great stress in her daily living and prevent[ed] her from enjoying her residence to the same extent afforded those in her building without disabilities." (*Id.* at pg. 10-11).

Globe is correct that Cruz cannot recover for emotional damages caused by Globe's breach of contract unless Globe has committed an independent tort with malice, wantonness or oppression. *See Park v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 940-42 (7th Cir. 2005) (citing Illinois law). Cruz, however, should receive compensation for her non-emotional damages in terms of the inconvenience resulting from the need to use the basement route and her need to wait for the Chicago Fire Department or others to take her up the front stairs when the basement route was unavailable.

Cruz does not explain how she arrives at the $8,000 figure or how that figure is reasonable. The court concludes that a compensation award to Cruz of $300 is reasonable. The court arrives at the $300 figure based on the representations made by counsel in open court

during the October 27th status hearing that Cruz's rent is approximately $300 since she lives in a government subsidized building. The first deadline for completion of the project was May 30, 2005, one and one-half months after the settlement agreement was enacted by the court. Even considering the possibility of reasonable extensions, Cruz was being denied the benefit of her bargain under the settlement agreement by July 31, 2005. It took approximately three months until October 27, 2005 for her to receive the benefit of her bargain under the settlement agreement. The $300 amount is reimbursement to Cruz of the portion of the rent for the three month period of August, September and October 2005 when Cruz was denied the appropriate and reasonable access that she had paid for in her rent and had been promised to her by Globe in the settlement agreement. The $300 should be paid to Cruz by noon on December 23, 2005.

## 2. Attorneys' Fees and Costs

Cruz seeks $14,139.54 in attorneys' fees and costs incurred by her attorneys during their efforts to enforce the settlement agreement. Globe counters that Cruz is not entitled to any attorneys' fees and costs because she not a prevailing party and it argues alternatively that Cruz's requested amount is unreasonable.

### a. Prevailing Party Status

Paragraph Nine of the settlement agreement states that "in the event of litigation claiming breach of this Agreement, attorneys' fees incurred in connection with such litigation shall be recoverable by the prevailing party to the same extent allowed under 29 U.S.C. § 794a." (Dkt. No. 36 at ¶ 9). The parties also agreed that "each party shall bear its own attorneys' fees, except as stated in paragraph nine" of the agreement. (*Id.* at ¶ 12).

Title 29, United States Code, Section 794a(b), the section incorporated by the parties'

into their agreement, states that "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee." 29 U.S.C. § 794a(b). Section 794a(b) is patterned on the language contained in 42 U.S.C. § 1988 and therefore this court shall turn to the Seventh Circuit's civil rights cases defining the term "prevailing party." *Jones v. Illinois Dep't of Rehab. Serv.*, 689 F.2d 724, 730 n.8 (7th Cir. 1982).

"To be a considered a prevailing party, one must have 'prevailed on the merits of at least some of his claims. ... Thus, the [Supreme Court] has held that a litigant is a prevailing party when he has obtained a judgment on the merits, a settlement agreement enforced through a consent decree or some other judicially sanctioned change in the legal relationship of the parties." *Dupuy v. Samuels*, 423 F.3d 714, 719 (7th Cir. 2005) (citing *Buckhannon Bd. of Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001); *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980); *Palmetto Properties, Inc. v. County of DuPage*, 375 F.3d 542, 548 (7th Cir. 2004)).

Cruz argues that entry of the settlement agreement resolving the original lawsuit is sufficient to vest her with prevailing party status for her pending attorneys' fee claim. The Seventh Circuit in *T.D. v. LaGrange School Dist. No. 102*, held that "some settlement agreements, even though not explicitly labeled as a 'consent decree' may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree." 349 F.3d 469, 478 (7th Cir. 2003) (citing *Smyth ex re. Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002)). "A settlement short of a consent decree may qualify if, for instance, the terms of the settlement were incorporated into the dismissal order and the order was signed by the court rather than the parties, or the order provided that the court would retain jurisdiction to enforce the terms of the

settlement. *Petersen v. Gibson*, 372 F.3d 862, 866-87 (7th Cir. 2004) (citing *T.D.*, 349 F.3d at 478-78; *Smalbein v. City of Dayton Beach*, 353 F.3d 901, 905 (11th Cir. 2003); *Roberson v. Giuliani*, 346 F.3d 75, 82-83 (2d Cir. 2003)); *see also*, *T.D.*, 349 F.3d at 478-79 (quoting *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 558 (3d Cir. 2003) ("A stipulated settlement could confer prevailing party status where it (1) contained mandatory language, (2) was entitled 'Order,' (3) bore the signature of the District Court judge, not the parties' counsel, and (4) provided for judicial enforcement.").

The settlement agreement entered on March 15 2005 met these four requirements and provides Cruz prevailing party status. However, the settlement agreement waives attorneys' fees related to the underlying claim (Dkt. No. 36 at ¶ 12), and only reserves the right to receive attorneys fees for a later enforcement claim if the settlement agreement was breached. The question, therefore, is how far does Cruz's prevailing party status extend, specifically, does her prevailing party status earned in the settlement of the underlying claim also extend to her present claim for attorneys' fees?

This court can mostly avoid this issue in that it is awarding Cruz $300 for her compensation claim for the inconvenience she suffered resulting from Globe's unreasonable breach of the agreement and because she prevailed in obtaining the relief she sought of having the ramp and lift installed. She is a prevailing party and she is entitled to some level of attorneys' fees in the enforcement action.

This court does, however, need to decide the issue of Cruz's status as a prevailing party in respect to the original underlying claim because this will impact the court's determination of what are reasonable attorneys' fees. Cruz seeks attorneys' fees beginning in mid May 2005. As

11

this court previously determined above, it is not reasonable to say that Globe breached the settlement agreement until the end of July 2005. If Cruz only obtains her prevailing party status from this present decision holding that Globe has breached the settlement agreement then Cruz is only entitled to attorneys fees starting in the beginning of August 2005.

Cruz cites to *King v. Illinois State Bd. of Elections*, 410 F.3d 404 (7th Cir. 2005), and *Alliance to End Repression v. City of Chicago*, 356 F.3d 767 (7th Cir. 2004), to support her view that she is entitled to attorneys' fees going back to May 2005. The Seventh Circuit in *King* held that "our cases make clear that, absent some authorization in the initial judgment itself to monitor compliance, parties who seek to protect a previous victory still must prevail in the action or proceeding brought to protect the victory in order to be entitled to attorneys' fees." 410 F.3d at 420.

The Seventh Circuit in *Alliance* noted that "attorneys' fees incurred in efforts to monitor compliance with the consent decree are said or assumed to be compensable even if no postjudgment order results from the efforts. ... [This is] best explained on a deterrence rationale: careful monitoring reduces the likelihood that the create will be violated." 356 F.3d at 770-71.

However, the situations discussed in *King* and *Alliance* are somewhat different from the situation in this case. Cruz waived her rights to attorneys' fees for the underlying claim. Thus, there was no right to attorneys' fees to monitor the situation because the parties were progressing under a settlement agreement, not a consent decree. A settlement agreement may be analogized to a consent decree in turns of determining whether Cruz obtains prevailing party status, but that does not mean that this entitled Cruz to attorneys' fees for monitoring compliance with the settlement. The parties in this agreement explicitly waived any right to attorneys' fees with the

12

exception of attorneys' fees related to Globe's breach of the agreement.

Consequently, Cruz prevailed in this enforcement action by receiving $300 in compensation for the breach of settlement agreement. The settlement agreement did not specifically authorize attorneys' fees to compensate for any type of monitoring by her attorneys that would be equivalent to monitoring the compliance with a consent decree or judicial authorization of monitoring of compliance with the original settlement. The agreement only authorized attorneys fees "in the event of litigation claiming breach of [the] agreement." (Dkt. No. 36 at ¶ 9). She has a right to receive attorneys fees as a prevailing party incurred as of August 1, 2005.

### b. Reasonableness of Requested Attorneys Fees and Costs

This court must also review the attorneys' fees requested by Cruz to determine that they are reasonable. "Attorneys' fees are assigned a 'lodestar' amount, [a figure which is] calculated by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate." *Mathur v. Board of Tr. of Southern Illinois Univ.*, 317 F.3d 738, 742 (7th Cir. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872 (7th Cir. 1995)). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). The initial lodestar figure may

be further adjusted by the court based on a number of factors.[2] *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175620, at *1 (N.D. Ill. Sept. 19, 2003) (citing *Hensley*, 461 U.S. at 434)).

"The determination of an attorney's 'reasonable hourly rate' is to be based on the 'market rate' for the services rendered. The burden of providing the 'market rate' is on the fee applicant, however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Spegon*, 175 F.3d at 554-55 (internal citations omitted).

"'The reasonable hourly rate (or 'market rate') for lodestar purpose is 'the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question.'" *Garcia*, No. 01 C 8945, 2003 WL 22175620, at *2 (quoting *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000)). "Evidence of 'market rate' includes rates other attorneys in the area charge paying clients for similar work, fee awards from prior cases, the attorney's credentials, and the attorney's actual billing rate." *Id.* (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311-13 (7th Cir. 1996)). "In addition, an attorney's affidavit alone cannot establish ... her market rate; however, such affidavit 'in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiff's burden.'" *Id.* (quoting *Harper*, 223 F.3d at 604).

Cruz "may recover only those hours that [her] attorneys would bill in the private sector."

---

[2] These factors may include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Mather*, 317 F.3d at 742 n.1.

14

*Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003) (citing *Hensley*, 461 U.S. at 434)). This court must exclude "hours that are excessive, redundant, otherwise unnecessary," *Id.*, and a petition for fees must provide sufficient description of the type of work performed. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992). "A court should not require any more [level of detail or itemization in the plaintiff's billings] than the level of detail paying clients find satisfactory." *Garcia*, No. 01 C 8945, 2003 WL 22175620, at *3 (N.D. Ill. Sept. 19, 2003) (citing *In the Matter of Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)).

The court has reviewed the Cruz's attorneys' documentation in support of her requested attorneys' fee award. Cruz has included copies of her attorneys' billings, affidavits in support of the reasonableness of their bill rate and information on their education and professional backgrounds. The requested amount, after excluding services performed before August 1, 2005 to properly reflect this court's decision on when Cruz became a prevailing party, is appropriate. This court awards Cruz $11,105.17 in attorneys' fees and $419.59 in costs.[3]

---

[3] The court calculated these figures in the following manner. Cruz requested $11,259 in attorneys fees for her attorney Jean Janes, $2,422.45 in attorneys fees for her attorney Max Lapertosa, and $458.09 in costs for a total request of $14,139.54. This court deducted $2,448 from the amount requested for Ms. Janes, $128.28 from the amount request for Mr. Lapertosa and $38.50 from the requested costs. These deductions represent the work performed and costs incurred before the court determined the date of August 1, 2005 as the date the defendant's delay constituted a breach of the settlement agreement.

## CONCLUSION

For the reasons set forth above, Cruz's motion of November 4, 2005 seeking compensation, attorneys fees' and costs resulting from Globe's breach of the parties' settlement agreement (Dkt. No. 35), is granted. Cruz is awarded $300 in compensation for Globe's unreasonable breach of the settlement agreement, $11,105.17 in attorneys' fees and $419.59 in costs. The $300 is to be paid to Cruz by noon on December 23, 2003. The attorneys' fees and costs are to be paid by January 13, 2006.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

Date: December 13, 2005